UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE No. 04021346-CIV-MOORE

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION )<br>)<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>STERLING TRADING GROUP, INC., UNIVERSAL )<br>FX, INC., QIX, INC., STG GLOBAL TRADING, INC., )<br>GRAYSTONE BROWNE FINANCIAL INC., JOSEPH )<br>ARSENAULT, AND ANDREW STERN, )<br>)<br>)<br>Defendants. ) | Consent Order of Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief as to Defendants STG Global Trading, Inc. and Graystone Browne Financial, Inc. |

## INTRODUCTION

On June 7, 2004, Plaintiff, the Commodity Futures Trading Commission ("Commission"), filed its Complaint for permanent injunction and other equitable relief against defendants Sterling Trading Group, Inc. ("Sterling"), Universal FX, Inc. ("UFX"), QIX, Inc. ("QIX"), STG Global Trading, Inc. ("STG"), Graystone Browne Financial, Inc. ("Graystone"), Joseph Arsenault ("Arsenault"), and Andrew Stern ("Stern") for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 13a-1 et seq. (2002), and the Commission Regulations promulgated thereunder ("Regulations"), 17 C.F.R. §§ 1 et seq. (2006). On June 9, 2004, this Court entered an *ex parte* Statutory Restraining Order [D.E. 12], *inter alia*, prohibiting the destruction of books and records and allowing the Commission to immediately inspect defendants' books and records.

1

# I.

## CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint in this action without a trial on the merits or further judicial proceedings:

1. STG and Graystone (collectively "Defendants") agree to entry of this Consent Order of Permanent Injunction, Civil Monetary Penalty and Other and Equitable Relief ("Consent Order");

2. The Defendants affirm that they have agreed to this Consent Order voluntarily and that no promise or threat has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order, other than as set forth specifically herein;

3. The Defendants acknowledge proper service of the Summons and Complaint;

4. The Defendants admit the jurisdiction of this Court over them in this action and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002);

5. The Defendants admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002);

6. The Defendants waive:

   a. any and all claims that they may possess under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148 of the Regulations, 17 C.F.R. §§ 148.1, et seq. (2009), relating to or arising from this action;

   b. any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act, 1996 HR 3136, Pub. L. 104-121, §§ 231-232, 110

2

Stat. 862-63 (1996), as amended by Pub. L. No. 110-28, 121 Stat. 112 (2007), relating to or arising from this action;

  c. any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

  d. all rights of appeal from this action;

7. The Defendants consent to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if the Defendants now or in the future reside or operate outside the Southern District of Florida;

8. The Defendants agree that neither they nor any of their agents, employees, contractors, representatives or attorneys shall take any action or make any public statement denying, directly or indirectly, any allegations in the Complaint or Findings of Fact and Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint or this Consent Order are without factual basis; provided, however, that nothing in this provision shall affect the Defendants': i) testimonial obligations; or ii) right to take legal positions in other proceedings to which the Commission is not a party. The Defendants shall undertake all steps necessary to ensure that all of their agents, employees, contractors, representatives or attorneys under their authority and/or actual or constructive control understand and comply with this agreement;

9. In consenting to the entry of this Consent Order, the Defendants neither admit nor deny the allegations of the Complaint or the Findings of Fact and Conclusions of Law contained in this Consent Order, except as to jurisdiction and venue, which they admit; provided however,

3

Defendants acknowledge that on March 20, 2009 this Court issued an order [D.E. 315] granting summary judgment in favor of the Plaintiff as to Count V of the Amended Complaint [D.E. 151], finding the Defendants liable for violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulation 32.11(a), 17 C.F.R. § 32.11(a) (2006). The Defendants agree and intend that the allegations of the Complaint and all of the Findings of Fact and Conclusions of Law made by this Court and contained in Part II of this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (1) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against any Defendant; (2) a proceeding to enforce this Consent Order; or (3) a proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a(1), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 et seq.;

10. The Defendants shall provide the Commission with immediate notice of any bankruptcy filed by, on behalf of, or against them and shall provide reasonable notice (within thirty days) of any change of address, phone number, or contact information in the manner required by Part V of this Consent Order until such time as their obligations set forth in the Consent Order are satisfied; and

11. No provision of this Consent Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against any of the Defendants in any other proceeding.

## II.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the

entry of the following Findings of Fact and Conclusions of Law without a trial on the merits or further judicial proceedings.

## A. Findings of Fact

### The Parties

1. The **United States Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act and the Regulations.

2. **STG Global Trading, Inc.** is a California corporation organized on July 14, 2003. Its principal place of business is 1901 Avenue of the Stars, Suite 1458, Los Angeles, California 90067. From approximately August 2003 through approximately June 2004, STG has been soliciting retail customers to engage in foreign currency options transactions with QIX. STG is not registered with the Commission in any capacity.

3. **Graystone Browne Financial, Inc.** a/d/b/a Graystone Browne Management, Inc. and f/d/b/a Global Forex Trading, Inc. is a Florida corporation organized on November 5, 2003. Its principal place of business is 18305 Biscayne Boulevard, Suite 303, Miami, Florida 33160. From at least November 5, 2003 through approximately June 2004, Graystone has been soliciting retail customers to engage in foreign currency options transactions with QIX. Graystone is not registered with the Commission in any capacity.

### Illegal Off-Exchange Foreign Currency Options Transactions

4. Since on or about August 2003 through at least June 2004, Graystone and STG, by and through their sales representatives, solicited retail customers to open accounts to trade illegal off-exchange foreign currency options at QIX. At all times relevant, QIX was the counterparty to the foreign currency option transactions. At all times relevant, Graystone's and

5

STG's relationship with QIX was exclusive in that Graystone and STG contractually agreed to solicit customers exclusively for QIX, and, in fact, Graystone and STG solicited customers exclusively for QIX.

5. After the initial solicitation, Graystone and STG sales representatives sent prospective customers, usually by fax, Federal Express, or Airborne Express, a customer account application and agreement generated by QIX and additional promotional information concerning the foreign currency market ("account-opening packet"). Once customers decided to invest, they were instructed to send their money directly to QIX.

6. At least 35 STG customers lost money while one customer made a profit for the period of December 2003 through June 2004. Approximately 97% of STG customers lost a total of $546,929.50. In addition, 77 Graystone customers lost money, while no customer made a profit for the period from December 2003 through June 2004. Graystone customers lost over $1.28 million.

7. Most, if not all, of the Graystone and STG customers were unsophisticated investors with little investment experience and were unfamiliar with foreign currency option transactions. Most, if not all, of Graystone's and STG's customers did not qualify as eligible contract participants. *See* 7 U.S.C. § 1a(12)(A)(xi).

8. During this period, QIX accepted funds from Graystone and STG customers and executed customer orders to purchase and sell foreign currency options contracts.

9. These options transactions were not conducted or executed on or subject to the rules of any contract market, or foreign board of trade.

10. Graystone and STG marketed these options contracts to the general public.

11. QIX was not a proper counterparty to these options transactions under the Act.

### Graystone and STG Fraudulent Conduct

#### (a) Fraudulent Solicitation of Customers

12. During telephone solicitations, Graystone and STG sales representatives made numerous false and misleading representations to prospective customers regarding the track record of Graystone or STG, or the profit potential of trading foreign currency options with QIX through Graystone or STG. Some of those false and misleading representations and material omissions regarding track record and profit potential included the following:

(i) stating that all of a Graystone sales representatives' clients were "making big, big money;" that all of a Graystone sales representatives' clients were "making money hand over fist;" that "[Graystone's] institutional clients, almost all of them, have earned as much as 250%-- excuse me, 232%, since January; individual accounts for [a Graystone broker] right now, are up about 110% in the past month and a half;" or that "we generate so much profit it's ridiculous," or "the bottom line is my clients make money," or "I'll show you how we make money in this market," or "I've made my clients and myself a great deal of money in the FX market," or words to that effect;

(ii) providing profit projections of 200%, 300% and other extravagant profit projections of up to 500% or more to customers or prospective customers on option investments in short periods of time, such as making $130,000 on a $20,000 investment; making $100,000 on a $20,000 investment; making $60,000 on a $20,000 investment within a matter of days or weeks, or that the customer could double or triple their money "even if we are half right," or words to that effect;

(iii) stating or implying that Graystone or STG customers had recently made significant profits, by describing recent price movements in foreign currency, making

7

statements such as "it's happened six separate times," or "the Euro moved 5 cents in the last week," or words to that effect;

(iv)  providing projections of significant steady monthly profits to customers or prospective customers on option investments, such as "making 20%-30% a month," "20%-30% every 90 days," or "I will show you one hell of a percentage gain over the next several months, years, constantly," or words to that effect;

(v)  providing materially misleading descriptions of the profit potential of trading retail currency options with Graystone or STG, with statements such as "forex outperforms NASDAQ 3 to 1," or "this is the goldrush of the new millennium," or "we trade foreign currency, the most liquid and lucrative market in the world," or words to that effect; and

(vi)  speaking about "limited risk" and "200-300" percent or more profits, or "20-30" percent per month profits, or words to those effects, while failing to disclose that the overwhelming bulk of Graystone and STG customers lost money.

13.  During telephone sales solicitations, Graystone and STG sales representatives made false and misleading statements regarding the risk of trading foreign currency options with QIX through Graystone or STG. Some of the false and misleading statements regarding the risk of trading foreign currency options with QIX through Graystone or STG, included the following:

(i)  stating that the particular foreign currency options recommended by the sales representative were "low-risk" or "no-risk," or words to that effect;

8

(ii)  stating that the foreign currency options recommended by the sales representative had so little risk that the customer should borrow money from a home equity line of credit to invest, or words to that effect;

(iii) stating that "we only make two or three verbal recommendations a year and we only do so when the information in front of us is so overwhelming that we can recommend it with such a high degree of confidence," or words to that effect;

(iv) stating that "we don't think we know where the Euro is going, we know where it is going," or words to that effect;

(v) stating that "in my 18 years of experience... I can count on one hand the number of times a situation like this has crossed my desk," or words to that effect;

(vi) stating that "when we feel we have the best opportunity to make the most amount of money with the least amount of risk, that's when we'll get into this market," or words to that effect;

(vii) stating that other special, time-sensitive or unique market conditions existed that limited the customer's or prospective customer's risk to a small portion of their investment, or words to that effect; and

(viii) stating that the sales representatives needed to mention the risk of loss "only because of rules or regulations," or words to that effect.

14. Graystone and STG sales representatives made false and misleading representations, or omitted to disclose material information, to customers and prospective customers, that trading currency options with QIX, Graystone and STG provided "unlimited profit potential," or words to that effect.

9

15. In fact, Graystone and STG sales representatives knew, or recklessly failed to determine, that the foregoing misrepresentations and material omissions described in paragraphs 13-14 were false. These sales representatives knew or recklessly failed to determine that:

(i) while they were making such representations regarding profit potential and risk, all or nearly all of Graystone's and STG's customers were losing money;

(ii) their representations of specific profit projections, limited risk, or purported special or unique market conditions had no reasonable basis in fact, because the statements were contained in generic and dated sales solicitation scripts that were pre-printed and distributed to all sales representatives to use in connection with their solicitation of customers; and

(iii) representations of "unlimited profit potential" or representations of the potential for triple, quadruple or greater profit percentages on specific recommended trades were false, because the sales representatives only offered and recommended to customers "spread" trades or "strangle" trades, and Graystone and STG customers were routinely placed into such "spread" or "strangle" trades, which limited the customer's profit potential and further increased the commissions charged to the customer.

16. Graystone and STG sales representatives further knew or recklessly failed to determine that both companies had a *de facto* policy of urging and pressuring customers to enter into such "spread" or "strangle" trades, which increased the amount of commissions the customer was charged, and further imposed a limit on the trade's profit potential, or which imposed a specific limit on the trade's profit potential far less than the profit projection made by the sales representative.

10

### (b) High-Pressure and Deceptive Sales Tactics

17. Graystone and STG sales representatives typically rushed prospective customers through the details of the account-opening packet, often telling prospective customers not to worry about the information because it was "boilerplate" language used to satisfy the government.

18. Once customers decided to invest, Graystone and STG sales representatives pressured them to wire or send their funds to QIX and return their signed account-opening packets almost immediately, insisting that the customer did not want to miss out on the huge profits that could be made.

19. Graystone and STG sales representatives typically requested additional funds from customers to continue trading, shortly after the customers opened their accounts. Graystone maintained systematic records of such requests for additional funds and described them as "upgrades," and it maintained commission records for "rolls" and "loads." If the sales representative was unsuccessful in convincing a customer to provide additional funds, the customers were typically referred to another sales representative (the "new representative"), usually Arsenault, who was falsely touted as Graystone's most successful and experienced trader.

### (c) Failure to Provide Access to Account Information

20. Graystone and STG did not provide customers with regular account statements. Graystone and STG claimed to provide customers with the ability to monitor their accounts on-line. However, in most cases, Graystone and STG customers could not access their accounts on-line. Graystone, STG, Sterling and UFX also failed to provide some customers with passwords to access their accounts on-line.

11

21. QIX at times sent customer account statements via U.S. mail, but customers typically received these statements well after a significant portion of their funds had been lost. Moreover, the statements were usually incomplete and confusing to read, rendering the statements materially defective.

22. When Graystone and STG customers could access their accounts on-line, the statements available were so confusing that customers could not decipher the status of their accounts or how their accounts were being traded.

23. Furthermore, QIX failed to maintain complete sets of customer account statements.

**B.  Conclusions of Law**

1. This Court has jurisdiction over the subject matter of this action and all parties hereto pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2. Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, in that all Defendants are found in, inhabit, or transact business in this district, and/or the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

3. This Court has personal jurisdiction over the Defendants pursuant to Section 6c of the Act, 7 U.S.C., § 13a-1, who acknowledge service of the Complaint and consent to the Court's jurisdiction over them.

4. The Commission and the Defendants have agreed to this Court's continuing jurisdiction over each of them for the purpose of enforcing the terms of this Order, and for any other purpose relevant to this action.

### Violation of Section 4c(b) of the Act and Regulation 32.11(a)

5. By the conduct described in paragraphs 4-11 of Section II.A above, and as previously determined by the Court in its March 20, 2009 Order (D.E. 315) granting summary judgment in favor of the Plaintiff as to Count V of the Amended Complaint [D.E. 151], finding the Defendants liable for violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulation 32.11(a), 17 C.F.R. § 32.11(a) (2006), Graystone and STG, by and through its employees, accepted orders and/or money for the purchase and sale of forex options contracts that were not conducted on or subject to the rules of a contract market or foreign board of trade, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulation 32.11(a), 17 C.F.R. § 32.11(a) (2006).

### Violation of Section 4c(b) of the Act and Regulations 1.1(b)(1),(3) and 32.9(a),(c)

6. By the conduct described in paragraphs 12-23 of Section II.A above, Graystone and STG, by and through their employees and agents, in connection with offers to enter into, the entry of, the confirmation of the execution of forex options transactions, cheated or defrauded or attempted to cheat or defraud customers, and deceived or attempted to deceive customers, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 1.1(b)(1) and (3), and 32.9(a) and (c), 17 C.F.R. §§ 1.1(b)(1) and (3), and 32.9(a) and (c) (2006).

III.

ORDER OF PERMANENT INJUNCTION

Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1,

**IT IS HEREBY ORDERED that:**

1. The Defendants are permanently restrained, enjoined, and prohibited from directly or indirectly cheating or defrauding or attempting to cheat or defraud other persons and willfully deceiving or attempting to deceive other persons in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of any commodity option transaction, including options transactions in foreign currency, subject to the Commission's jurisdiction, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 1.1(b)(1) and (3), and 32.9(a) and (c), 17 C.F.R. §§ 1.1(b)(1) and (3), and 32.9(a) and (c) (2006).

2. The Defendants are permanently restrained, enjoined, and prohibited from soliciting and/or accepting orders for, and/or accepting money, securities or property in connection with, the purchase and sale of commodity options when such transactions have not been conducted or executed on or subject to the rules of a contract market, or a foreign board of trade in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b)(2002), and Regulation 32.11(a), 17 C.F.R. § 32.11(a) (2006).

3. Graystone and STG are permanently prohibited from engaging, directly or indirectly, in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), including, but not limited to, the following:

   a) trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

14

b) engaging in, controlling or directing the trading for any commodity interest account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

c) engaging in or attempting to engage in soliciting or accepting orders for, or accepting money, securities or property for any commodity interest transaction subject to the Act, including options transactions in foreign currency;

d) applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9);

e) entering into any commodity interest transactions for Graystone's and/or STG's own accounts, for any account in which Graystone and/or STG has a direct or indirect interest, and/or having any commodity interests traded on either of their behalf; and

f) engaging in any business activities related to commodity interest trading, including options transactions in foreign currency, subject to the Commission's jurisdiction.

## IV.

## ORDER FOR OTHER EQUITABLE RELIEF

**IT IS HEREBY ORDERED** that:

**Civil Monetary Penalty**

1. The Defendants shall pay Civil Monetary Penalties ("CMP") in the following amounts:

- Graystone          $1,000,000, plus post-judgment interest; and
- STG                $500,000, plus post-judgment interest.

2. Post-judgment interest shall accrue commencing on the date this Consent Order is entered. The post-judgment interest rate shall be determined by using the Treasury Bill rate prevailing on the date this Consent Order is entered, pursuant to 28 U.S.C. § 1961.

3. The Defendants' CMP obligations are immediately due and owing. The Defendants shall pay their CMP obligations by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Marie Bateman – AMZ-300
> DOT/FZZ/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-6569

If payment by electronic transfer is chosen, the Defendants shall contact Marie Bateman or her successor at the address above to receive payment instructions and shall fully comply with those instructions. The Defendants shall accompany payment of the CMP with a cover letter that identifies the paying Defendant as the payor and the name and docket number of this proceeding. The Defendants shall simultaneously transmit copies of the cover letter and the form of payment to (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, NW, Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

## V.

## OTHER PROVISIONS

1. <u>Continuing Jurisdiction of This Court</u>: This Court shall retain jurisdiction over the Defendants to assure compliance with this Order and for all other purposes related to this action.

2. <u>Notices</u>: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows: Notice to the Commission: Attention, Director of Enforcement, Commodity Futures Trading Commission, Division of Enforcement, 1155 21st Street, N.W., Washington, DC 20581. Notice to the Defendants: Attention, counsel of record.

3. <u>Waiver</u>: The failure of any party to this Consent Order at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

4. <u>Equitable Relief</u>: The equitable relief provisions of this Consent Order shall be binding upon the Defendants and any person who is acting in the capacity of officer, agent, employee, or servant of the Defendants, and any person acting in active concert or participation with the Defendants who receives actual notice of this Consent Order by personal service or otherwise.

5. <u>Acknowledgments</u>: Upon being served with a copy of this Consent Order after entry by this Court, the Defendants shall sign an acknowledgment of service and serve such acknowledgment on this Court and the Commission within seven days.

6. <u>Invalidation</u>: If any provision or the application of any provision of this Consent Order is held invalid, the remainder of the Consent Order and the application of the provision to any other person shall not be affected by the holding.

7. <u>Entire Agreement and Amendments</u>: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by further order of this Court.

8. <u>Authorization</u>: Joseph S. Arsenault hereby warrants that he is a principal and officer of both Graystone and STG, that this Consent Order has been duly authorized by Graystone and STG, and that he has been duly empowered to sign and submit this Consent Order on behalf of Graystone and STG.

///
///
///
///
///

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order.

Done and ORDERED in Chambers at Miami, Florida this _____ day of _____, 2009.

_____
Kevin Michael Moore
United States District Judge

CONSENTED TO AND APPROVED BY:

Approved for Entry:

_____ Date: June 8 09
Joseph S. Arsenault, on
behalf of Defendants STG Global Trading Group, Inc.
and Graystone Browne Financial Group, Inc.

_____ Date:_____
Jeffrey S. Rosen, Esq. (as to form only)

Jeffrey S. Rosen, Esq.
Cozen O'Conner
1627 I Street NW, Suite 1100
Washington, DC 20006
Telephone: (202) 918-4800
Fax: (202) 918-4830
Attorney for Defendants STG Global Trading Group, Inc.
and Graystone Browne Financial Group, Inc.

_____ Date:_____
Peter M. Haas, Chief Trial Attorney <phaas@cftc.gov>
Florida Bar No. A5500182
Eugene Smith, Trial Attorney <esmith@cftc.gov>
Florida Bar No. A5500944
Division of Enforcement
Commodity Futures Trading Commission
Three Lafayette Centre, 1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5377 telephone (Haas)
(202) 418-5371 (Smith)
Attorneys for Plaintiff

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order.

Done and ORDERED in Chambers at Miami, Florida this 20th day of August, 2009.

Kevin Michael Moore
United States District Judge

CONSENTED TO AND APPROVED BY:

Approved for Entry:

_____  Date:_____
Joseph S. Arsenault, on
behalf of Defendants STG Global Trading Group, Inc.
and Graystone Browne Financial Group, Inc.

_____  Date: June 9, 2009
Jeffrey S. Rosen, Esq. (as to form only)

Jeffrey S. Rosen, Esq.
Cozen O'Conner
1627 I Street NW, Suite 1100
Washington, DC 20006
Telephone: (202) 918-4800
Fax: (202) 918-4830
Attorney for Defendants STG Global Trading Group, Inc.
and Graystone Browne Financial Group, Inc.

_____  Date: 7/22/09
Peter M. Haas, Chief Trial Attorney <phaas@cftc.gov>
Florida Bar No. A5500182
Eugene Smith, Trial Attorney <esmith@cftc.gov>
Florida Bar No. A5500944
Division of Enforcement
Commodity Futures Trading Commission
Three Lafayette Centre, 1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5377 telephone (Haas)
(202) 418-5371 (Smith)
Attorneys for Plaintiff